SAUNDERS, Plaintiff-Respondent, v. DEC INTERNATIONAL, INC., f/k/a Dairy Equipment Company, Defendant-Appellant.

Supreme Court

*No. 76–240. Submitted on briefs September 7, 1978.—
Decided October 3, 1978.*
(Also reported in 270 N.W.2d 176.)

For the appellant the cause was submitted on the briefs of *Thomas P. Solheim* and *Ross & Stevens, S. C.* of Madison.

For the respondent the cause was submitted on the brief of *Gerald C. Nichol* and *Aagaard, Nichol, Wyngaard & Wilson* of Madison.

HEFFERNAN, J.   The appeal is from an order denying a motion for summary judgment. The plaintiff, Glenn T. Saunders, brought an action alleging that defendant, DEC International, Inc., was obligated to him in the amount of $60,000 for commissions on the sale of equipment manufactured by DEC. Following defendant's answer denying the material allegations of the plaintiff's complaint, DEC brought a motion for summary judgment, which demonstrated that plaintiff's cause of action accrued more than two years prior to the commencement of the action. It was asserted that any claim the plaintiff had was therefore barred by sec. 893.21(5), Stats., the two-year statute of limitations, because the claim is one for "unpaid salary, wages or other compensation for personal services."

The motion for summary judgment was brought before the court on stipulation of the parties. It is conceded that plaintiff's cause of action accrued prior to February 11, 1972, and would be barred by sec. 893.21(5), Stats., if the period of limitations set forth therein is applicable.

The trial court concluded that Saunders' cause of action was not barred by sec. 893.21(5), Stats., and that the six-year period of limitations prescribed by sec. 893.19 (3) applied.

The subsequent order denying the motion for summary judgment is before this court on DEC's appeal.

The judge in his memorandum opinion stated that he accepted the legal theories of the plaintiff as set forth in his trial brief. The plaintiff's trial brief, which has been made a part of the record, relies upon the policy of this court to construe statutes of limitations narrowly and to bar only causes of action that clearly fall within the statute's ambit. Plaintiff also relied upon the theory expressed by this court in *Estate of Javornik v. Vodnik*, 35 Wis.2d 741, 151 N.W.2d 721 (1967), that the two-year statute of limitations, sec. 893.21(5), Stats., applies only to causes of action where "human labor itself is sought and is the object of the compensation" (at 749), and is inapplicable to causes of action where the defendant's interest was to secure an end product, result, or fruits of the labor.

It is argued on this appeal by plaintiff, as it was at trial, that DEC had no interest in Saunders' labor in itself but was only interested in compensating Saunders in the event the end product of his labor was the sale of a DEC product. Only in that event—the consummation of a sale—was any payment due. The compensation was unrelated to the hours or amount of labor or effort expended by Saunders. It depended solely upon results. Saunders claims he was to receive a commission of five percent of sales made, irrespective of the time spent or labor expended.

We accept the plaintiff's position as a correct statement of the law of Wisconsin. Sec. 893.21(5), Stats., covers claims for "salary, wages or other compensation for personal services." We hold that the phrase, "other compensation for personal services," applies only when compensation is offered or promised for the labor itself, as opposed to the results or fruit of the labor. The defendant promised only to pay for results, *i.e.*, to pay a commission on a completed sale, and the plaintiff seeks

only to be paid for the results of his labor—the commissions he claims to be due. The motion to grant summary judgment on the ground that the statute of limitations had run was properly denied. We affirm and remand the record to the circuit court for trial.

■

The normal period within which contract actions must be brought is six years (sec. 893.19(3), Stats.). The two-year limitation period asserted in bar by the defendant is an exception to the general rule. Because numerous contracts involve an element of personal services, an overbroad interpretation of the term, "personal services," in the two-year statute of limitations would result in the exceptional circumstances swallowing up the general rule and would tend to make the shorter period of limitations the norm, rather than the six-year period.

To avoid the danger of subverting the legislative intent, this court, in accordance with generally accepted standards of jurisprudence, has interpreted statutes of limitation so that no person's cause of action will be barred unless clearly mandated by the legislature. This particular statute, therefore, has been construed "in favor of litigants to limit the number of actions which are barred." *Lorenz v. Dreske,* 62 Wis.2d 273, 214 N.W.2d 753 (1974).

■

In accordance with that general philosophy of insuring that litigants shall have their day in court unless clearly barred, words of doubtful or ambivalent import have been construed by this court to bar only those actions the legislature clearly intended to extinguish.

The definitive and properly narrow construction of the phrase, "personal services"—a construction which we follow—appears in *Javornik, supra,* at 749:

"We think 'personal services' as used in sec. 893.21 (5), Stats., means human labor such as is commonly ren-

dered in return for a salary or a wage in the case of an employee and for 'other compensation' in the case of an independent contractor or one not in an employee relationship. Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service. While some personal services may result in a salable article or an end product, the distinguishing feature of personal services for the purpose of this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased."

This language in *Javornik* has been repeatedly invoked as a rule or test. *E.g., Rupp v. O'Connor,* 81 Wis.2d 436, 440, 261 N.W.2d 815 (1978); *Sussmann v. Gleisner,* 80 Wis.2d 435, 440, 259 N.W.2d 114 (1977); *Green v. Granville Lumber & Fuel Co.,* 60 Wis.2d 584, 211 N.W.2d 467 (1973). The test is whether the compensation was paid for "human labor itself" or for "the end product or the fruit of the service." If the labor itself was purchased, the two-year statute applies.

We are satisfied that Saunders' claim fails to meet the test for application of the two-year statute. DEC purchased results or the fruits of labor, and not labor itself.

The defendant DEC offers two counter arguments to this proposition. The first is that the two-year-limitation statute was intended by the legislature to apply in all cases where the amount of compensation due was known, or could be readily known, by the claimant at the time, or shortly after, the services were rendered. While defendant makes a plausible argument that the legislature, acting in pursuance of that philosophy, could well have included commissions or sales within the class of claims that must be litigated promptly, it did not do so. Rather, it sought to enforce the prompt litigation of claims "for compensation for personal services." To construe commissions due upon the attainment of results, irrespective

of the quantum of personal effort or services, as compensation for personal services would have the effect of barring litigants from their day in court when the legislature has not clearly mandated that result. Such result would be contrary to the consistent interpretative philosophy of this court—to bar claims by invocation of statutes of limitation only when the legislature has spoken with clarity.

The defendant's second argument is that application of the "results" or "fruits of labor" test has the automatic consequence of excluding all claims of independent contractors from the application of the two-year period of limitation. Defendant, building upon that house of cards, points out that *Javornik* itself appears to recognize that some independent contractors may come within the two-year period. Hence, it is argued that *Javornik* is internally inconsistent and does not furnish a reliable and appropriate standard.

It is conceded by the parties that Saunders was an independent contractor, but we do not apply the *Javornik* rule automatically to exclude Saunders from application of the two-year statute of limitation for that reason. Defendant's fear that the mere labeling of a claimant as an independent contractor automatically results in the longer period of limitations is unfounded and appears to be the consequence of overlooking the crucial factor which is determinative of the status of an independent contractor and also results from a misinterpretation of *Javornik*.

Defendant assumes that all independent contractors are hired to produce a given end product or to produce an ultimate desired result. That may sometimes, or even usually, be the case; but such is not implicit in the independent-contractor status.

In *Weber v. Hurley*, 13 Wis.2d 560, 568, 109 N.W.2d 65 (1961), we quoted with approval the following definition:

"It is stated in 18 McQuillin, Mun. Corp. (3d ed.), p. 343, sec. 53.75:

" 'An independent contractor is one who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work in accordance with his own ideas or under plans furnished by the person for whom the work is done, to produce certain results required by such person. . . .' "

Defendant stresses the fact that the definition mentions that independent contractors are hired to produce results, but this is not the distinguishing feature of an independent contractor. Regular employees, in theory at least, are hired to produce some sort of results, though of course they are not usually paid on the basis of results. Servants are employees who are physically controlled by their masters, while independent contractors are not controlled as to their physical conduct by the persons who hire them. Restatement (Second) of *Agency* (1957), sec. 2.[1] The crucial distinguishing feature of independent contractors as opposed to servants is lack of physical control, not production of results.

---

[1] The language of the Restatement (Second) of *Agency*, sec. 2, is:

"Sec. 2. Master; Servant; Independent Contractor

"(1) A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"(2) A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent."

This court has on several occasions indicated that the claims of independent contractors can be within the two-year statute's coverage. In fact, *Javornik* assumes in dicta that such claims can be covered:

"We think 'personal services' as used in sec. 893.21 (5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee *and for 'other compensation' in the case of an independent contractor* or one not in an employee relationship." (Emphasis added.) 35 Wis.2d at 749.

In the most recent case involving the statute, the court found that the claim of an independent contractor, a self-employed carpenter, was not barred by the two-year statute, because the end product purchased by the compensation was a remodeled attic, not labor alone. *Rupp v. O'Connor*, 81 Wis.2d 436, 441, 261 N.W.2d 815 (1978). But the court did not rely on the fact that the plaintiff was an independent contractor to exclude his claim from the statute's reach and, in fact, quoted the language of *Javornik* which assumes independent contractors' claims can be covered by the statute. *Rupp v. O'Connor, supra,* at 439.

The statute itself provides support for the proposition that independent contractors' claims for compensation for personal services are within its coverage. The same year that the legislature enacted the statute, it amended it to make an exception for fees for professional services. Fees for professional services are compensation for personal services of independent contractors. As this court has noted, if the language of the statute excluded all independent contractors, the exception would have been unnecessary and meaningless. *Estate of Bloomer,* 2 Wis. 2d 623, 630, 87 N.W.2d 531 (1958).

It seems clear, then, that independent contractors' claims can be covered by the two-year statute of limita-

tions. But it does not follow that the claim of the plaintiff in the instant case, an independent contractor, is covered. The defendant suggests that independent contractors would always be excluded from the statute's coverage by the *Javornik* test, because they are always hired to produce results. Apart from missing the distinguishing feature of an independent contractor, this argument misreads *Javornik*. Servants, as well as independent contractors, are hired with certain goals, tasks, or results in mind. But the tests of *Javornik, supra* at 749, goes not to the purpose of the contract but to the object of the compensation. Wages and salaries, two categories of compensation definitely covered by sec. 893.21(5), Stats., are generally paid without regard to production of results. Independent contractors are sometimes paid on the basis of labor and sometimes on the basis of production of results. Attorneys, for instance, are sometimes paid on the basis of results (contingent-fee arrangements), but often they are paid by the hour. Doctors are also often paid by the hour, and medical bills are due whether or not the treatment is successful. Fees for professional services are explicitly excluded from the coverage of the statute, but these examples illustrate that the *Javornik* test is whether the object of the compensation is to pay for labor, not whether the object of the contract is labor apart from any result (which is unlikely ever to be the case). An independent contractor who is paid by the hour or by any other measure of labor, as opposed to being paid on the basis of results obtained by that labor, would have to bring his claim within the two-year limit of the statute, absent some extraordinary consideration. Since the plaintiff in the instant case was paid for results—sales—rather than for labor regardless of results, the statute does not bar his claim.

*By the Court.*—Order affirmed and remanded.